Argued and submitted October 4, 1996, reversed and remanded for reconsideration December 24, 1997

Gary PRIMACK,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(Agency No. 2-3501-BA9811; CA A87535)

951 P2d 1097

Lorey H. Freeman, Multnomah County Legal Aid Service, argued the cause and filed the briefs for petitioner.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant seeks judicial review of an order of the Adult and Family Services Division (AFSD) that terminated his and his daughter's eligibility for an Aid to Families with Dependent Children (ADC) grant.[1] We reverse and remand for reconsideration.

Claimant has legal custody of his daughter. The child's mother does not live with claimant and has not done so since their divorce in 1990. Following the divorce, claimant had physical custody of the child, and he and the child applied for and received an ADC grant. The ADC grant program is a joint federal-state program that provides financial assistance and other services to needy dependent children and the parents or relatives with whom they live. 42 USC § 601. Oregon participates in the program, which is run on the state level by AFSD. ORS 418.100. According to federal law, to qualify for assistance, the family applying must have a needy child who (1) is deprived of parental support or care due to a parent's death, continued absence from the home or physical or mental incapacity, (2) is living with a specified relative, and (3) is under a certain age. 42 USC § 606(a).[2] When claimant initially applied for the grant, AFSD determined that claimant and the child were eligible for an ADC grant because the child was a needy minor who lived with

---

[1] AFSD issued the final order closing claimant's ADC grant on January 12, 1996. While we acknowledge that Congress has significantly altered the ADC program since that time, in conducting our review we look only to the law in effect when the agency issued its order. All references to state and federal law in this opinion refer to the law in effect at that time.

[2] 42 USC § 606(a) defines a "dependent child" as a needy child

"(1) *who had been deprived of parental support or care by reason of the death, continued absence from the home* (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and *who is living with his father*, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, *in a place of residence maintained by one or more of such relatives as his or their own home*, and (2) who is (A) *under the age of eighteen* or (B) at the option of the State under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training) if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training)[.]"

(Emphasis supplied.)

claimant and "had been deprived of parental support and care by the continued absence of her mother."

In 1994, mother began having increased visitation with her daughter. Pursuant to a court visitation order, the child began spending "12 nights in the home of her mother each calendar month."[3] Claimant remained the sole legal custodian of the child. After receiving a copy of the court order modifying visitation, AFSD determined that, as a result of the increased visitation, claimant and the child were no longer eligible for an ADC grant.

Claimant requested a hearing on the division's decision to terminate his ADC grant. He argued that ORS 418.149 directed the agency to assume that his daughter was deprived of parental support or care due to the continued absence of a parent. ORS 418.149 provides:

"(1)   For purposes of ORS 418.035, *where a parent is living out of the home in which the child resides*, it shall be assumed that the child is deprived of parental support or care by reason of the continued absence of the parent unless:

"(a)   The parent visits the child in the child's home more than four times per week or more than a total of 12 hours per week; and

"(b)   The functioning of the parent as a provider of maintenance, physical care and guidance is not interrupted or terminated as a result of absence of the parent from the home.

"(2)   A determination that a needy child is not deprived of parental support or care by reason of the continued *absence of a parent shall not be based solely on an award by a court of joint legal custody.*"

(Emphasis supplied.) Claimant argued that, because the mother did not visit the child more than 12 hours per week or four times per week in the home that claimant and the child

---

[3] AFSD found that the court order provided

"(1) that, every other weekend, the child was to reside with her mother from Friday after school through Tuesday before school (4 nights); and,

"(2) that, every alternate weekend, the child was to reside with her mother from Sunday through Tuesday before school (2 nights)."

shared, ORS 418.149(1) was satisfied. Therefore, AFSD had to assume that claimant's daughter was deprived of parental support or care due to the continued absence of the mother, and he and his daughter were eligible for an ADC grant.

AFSD disagreed. It concluded that ORS 418.149 did not apply, because it states a visitation standard that "addresses the situation in ADC cases in which the child resides with one parent and the other parent visits the child in the custodial parent's home." In contrast, here, according to OAR 461-125-120(2) and OAR 461-125-130(2), the child resided with both of her parents because she lived with each parent more than 30 percent of every month.[4] As a result, ORS 418.149 did not apply because neither parent ever lived "out of the home in which the child resides."

Instead, AFSD held that OAR 461-125-120(2) applied. That rule provides that a "deprivation based on the continued absence does not exist" when

"[b]oth parents share care, control, and supervision of the child within each calendar month. This means:

"(a) Each parent makes significant decisions about their child's life; and

"(b) The child sleeps at least 30 percent of the time during the calendar month in the home of each parent."

AFSD concluded that, under that regulation, claimant's daughter was not deprived of parental support or care due to the continued absence of a parent. It found that both her parents

"share care, custody, and supervision of their child * * * within each calendar month because their child sleeps at least 30 percent of the time each calendar month in the home of each parent, and because each parent makes significant decisions about their child's life and welfare."

On review, claimant argues that the legislature intended for ORS 418.149 to apply even when the child has

---

[4] OAR 461-125-130(2) provides:

"The absent parent is considered to be living in the same home as the dependent child if the absent parent sleeps at least 30 percent of the time during the calendar month in the child's home."

two homes, one with each parent. According to claimant, the reference in ORS 418.149(1) to "the home in which a child resides" is intended to refer to the home of the parent with legal custody. Therefore, even if a child lives with each parent, unless ORS 418.149(1)(a) and (b) are satisfied, that child is presumed to be deprived of parental support or care due to the continued absence of a parent. Applying ORS 418.149(1)(a) and (b) here, claimant argues, the agency would have to assume that his child was deprived due to the continued absence of her mother.

■      We conclude that a legal custody award is not determinative of where a child lives for purposes of ORS 418.149(1). ORS 418.149(1) states that it applies to situations "where a parent is living out of the home in which the child resides." Claimant argues that the relevant "home" for purposes of the statute is the home of the parent with legal custody. However, a legal custody award is not determinative because it does not, necessarily, describe where or with whom a child actually resides. Instead, a factual inquiry is necessary to determine where and with whom a child actually lives. An example illustrates the point: If a mother has sole legal custody of her child but the child actually lives with the father, under claimant's understanding of ORS 418.149(1), AFSD would have to treat the child as living with her mother. If the child's father did not visit the mother's home, AFSD would have to assume that the child was deprived due to the continued absence of the father from the home. Because the child actually lived with the father, that result would make no sense. A factual inquiry would reveal that the child lived with her father. AFSD could then apply ORS 418.149(1) to determine whether the child was deprived of parental support or care due to the continued absence of her mother. We conclude that legal custody is not determinative of where and with whom a child resides for purposes of ORS 418.149(1).[5] Instead, we agree with AFSD that, to determine

---

[5] ORS 418.149(2) supports our conclusion that legal custody is not determinative of that inquiry. That section provides that a determination that a child is not deprived of parental support and care due to the continued absence of a parent cannot be based solely on an award of joint custody. Instead, a factual inquiry into the actual circumstances of the child's life is required.

where and with whom a child resides, AFSD must conduct a factual inquiry.

■　　The issue that remains is whether ORS 418.149 applies when that factual inquiry reveals that the child has two homes, one with each parent. Claimant argues that the statute does apply. We disagree. ORS 418.149(1) explicitly refers to a situation in which a child has only one home. It does not envision a situation in which a child has two homes, one with each parent. As a consequence, it focuses on the interaction between the absent parent and child through the parent's visits to the child's only home. Its purpose is to ensure that the child is not denied ADC assistance merely because his or her absent parent visits. To accomplish that purpose, the statute creates a statutory presumption that allows interaction between an absent parent and his or her child but complies with the federal regulation defining a continued absence. However, because ORS 418.149(1) was not designed to evaluate cases where a child has two homes, one with each parent, the statutory presumption created by the statute could violate federal law when applied to a child in that situation. Although one parent might be out of the home that is applying for benefits, that absence might not "interrupt or * * * terminate the parent's functioning as a provider of maintenance, physical care, or guidance for the child," or "preclude[ ] counting on the parent's performance of the function of planning for the present support or care of the child." 45 CFR § 233.90. Therefore, because of its purpose and design, the application of ORS 418.149 in a situation where a child lives with each parent part of each month would be inappropriate and would not ensure compliance with 45 CFR § 233.90. Because claimant concedes that that is the situation here, we conclude that ORS 418.149(1) does not apply to this case.

Instead, AFSD has promulgated OAR 461-125-120(2),[6] which applies when a child lives with each parent during part of each calendar month. Under that rule, a child

---

[6] ORS 411.060 gives AFSD the authority "to adopt and enforce such rules as are necessary to assure full compliance with the terms of federal and state laws."

is not deprived of parental support or care due to the continued absence of a parent if the child's parents share "care, custody and control" of their child. That means:

"(a) Each parent makes significant decisions about their child's life; *and*

"(b) The child sleeps at least 30 percent of the time during the calendar month in the home of each parent."

*Id.* (emphasis supplied). In its order terminating the ADC grant, AFSD concluded that, according to that rule, the child was no longer deprived due to the continued absence of a parent. Its ultimate finding of fact was that

"[the parents] share care, custody, and supervision of their child * * * within each calendar month because their child sleeps at least 30 percent of the time each calendar month in the home of each parent, and because each parent makes significant decisions about their child's life and welfare."

Claimant argues that, even if OAR 461-125-120(2) applies to this situation, the ADC grant was still improperly terminated because substantial evidence does not support AFSD's ultimate finding of fact that "each parent makes significant decisions about their child's life."

■      An agency's findings must be supported by "substantial evidence" in the record. ORS 182.482(8)(c). In *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996), the Supreme Court held that

"in addition to the statutory requirement that findings be supported by substantial evidence, agencies also are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusion* that it draws from those facts."

(Emphasis in original.) That reasoning must be sound. An examination of the order reveals that, in this case, the reasoning AFSD used in reaching its conclusion is flawed.

In explaining its conclusion, AFSD stated:

*"The court order substantially increasing the time the child was to spend with her in her own home requires that the mother exercise significant decisions about her child's life and welfare while the child resides with her.* For example,

ORS 107.154 provides that a custody determination does not deprive a noncustodial parent of the authority to continue in such parental acts as inspecting school, government, law enforcement, or medical records of the child, to consult with school and medical personnel regarding the child, and to authorize emergency medical treatment for the child. These are not insignificant decisions. *Consequently, as a result of the court order, granting the child's mother significant time with her child in her own home, it is readily apparent that, during such times, the mother is not only authorized but encouraged, as a matter of law, to exercise significant decisions that affect her child's life and welfare.*"

(Emphasis supplied.) It is evident from that explanation that AFSD did not rely on facts in evidence to reach its ultimate finding that "each parent makes significant decisions about the child's life and welfare." Instead, the agency relied on its interpretation of the child's mother's statutory rights. The mere opportunity to exercise parental support or care, however, does not support a presumption that a parent actually acts on that opportunity. *See, e.g., Matter of Souder*, 497 A2d 1258, 1264 (NJ Super Ct App Div 1984) (holding that "[t]he mere opportunity to function as a parent is an improper criterion" in conducting continued absence evaluations). The rights afforded to a noncustodial parent under ORS 107.154 are irrelevant without factual findings that the parent exercised those rights and, in so doing, made significant decisions about the child's life and welfare. There are no such findings here.

■ Further, AFSD's finding describing the division's initial reassessment of claimant's eligibility and its explanation of its conclusion demonstrate that, in making its ultimate finding, AFSD improperly collapsed the two elements of OAR 461-125-120(2). We agree with claimant that the agency "essentially found[,] as a matter of law[,] that the requirement of subsection (a) is automatically met when the requirement of subsection (b) is met." That was error. The evidence that established that the child sleeps more than 30 percent of each calendar month in each of her parent's homes might be relevant to determining whether each parent makes significant decisions about the child's life and welfare. However, that the first requirement is satisfied cannot alone establish

that the second requirement is satisfied. If such an interpretation were permitted, the requirement that both parents make significant decisions about their child's life and welfare would be rendered superfluous.

■ As a result of the order's flawed reasoning, we cannot properly review the record to determine whether substantial evidence supports its ultimate finding. Because we cannot tell from the order whether, if it had properly applied the rule, AFSD would have concluded that both parents, in fact, made significant decisions about the child's life and welfare, we remand to the agency for reconsideration.

Reversed and remanded for reconsideration.